**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Attorneys On Signature Page]

*Attorneys for Plaintiff,*
Casey Blotzer

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CASEY BLOTZER, individually, and on behalf of all others similarly situated**,<br><br>Plaintiff,<br><br>vs.<br><br>**ACURIAN, INC., and DOES 1 through 10, inclusive, and each of them**,<br><br>Defendants. | Case No.: 13-CV-03438-SVW-MAN<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT ACURIAN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>**Date:**   September 23, 2013<br>**Time:**   1:30 p.m.<br>**Place:**   6<br>**Judge:**  Hon. Stephen V. Wilson |

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ....................................................................1

II.   STATEMENT OF THE FACTS .................................................1

III.   LEGAL STANDARD ON MOTION TO DISMISS ......................3

IV.   STATUTORY BACKGROUND .................................................4

V.   PLAINTIFF MORE THAN ADEQUATELY ALLEGES THAT
      DEFENDANT'S UNWANTED TELEPHONE CALLS CONSTITUTE
      UNSOLICITED ADVERTISEMENTS, AS CONFIRMED BY THE
      FCC AND NINTH CIRCUIT AUTHORITY ...............................5

      A.   Multiple FCC Orders Confirm Defendant's Calls Are Unsolicited
            Advertisements ............................................................6

      B.   The Prerecorded Messages Here Are Not The Type of Messages
            Exempted By The FCC .................................................7

      C.   Defendant's Case Law Is Out-of-Date, Non-Binding, and
            Readily Distinguishable .................................................8

            1.   Defendant's reliance on *Ameriguard* is misplaced ...............8

            2.   Defendant's reliance on *Phillips* is misplaced .......................9

            3.   Both *Ameriguard* and *Phillips* are distinguishable on the
                  basis that the court in each of those cases had the benefit
                  of the actual facsimile at issue when ruling on a motion to
                  dismiss pursuant to Fed. R. Civ. P. 12(b)(6) .......................11

            4.   *Friedman* is factually distinguishable .................................12

            5.   Recent decisions distinguish *Ameriguard* and *Phillips* and
                  support Plaintiff's position that the calls are actionable .....13

///

1

**Kazerouni Law Group, APC**
Costa Mesa, California

**VI.     DEFENDANT'S ECONOMIC BENEFIT COMBINED WITH THE
         GOAL OF ACQUIRING NEW CUSTOMERS FURTHER
         SUPPORTS PLAINTIFF'S ARGUMENT THAT THE
         PRERECORDED CALLS IN QUESTION ARE UNSOLICITED
         ADVERTISEMENTS** ................................................................................14

**VII.    PLAINTIFF HAS ADEQUATELY ALLEGED THAT
         DEFENDANT'S TELEPHONE CALLS CONSTITUTE
         TELEPHONE SOLICITATIONS REGARDING FUTURE
         SERVICES**................................................................................................16

**VIII.   TCPA PROVIDES FOR VICARIOUS LIABILITY**...............................18

**IX.     CONCLUSION** .........................................................................................21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.,*
   329 F. Supp. 2d 789
   (M.D. La. Aug. 5, 2004)............................................................................20

*Ameriguard, Inc. v. Univ. of Kansas Medical Center Research Institute, Inc.,*
   2006 WL 1766812
   (W.D. Missouri, June 23, 2006) ..........................................................passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544
   (2007) ...............................................................................................3, 7

*Bridgewater Health Care Ctr., Ltd., v. Clark,*
   2012 U.S. Dist. LEXIS 37310
   (N.D. Ill. March 19, 2013)....................................................................19

*Brown v. Defender Sec. Co.,*
   2012 WL 5308964
   (C.D. Cal. Oct. 22, 2012) ......................................................................4

*Chesbro v. Best Buy Stores, L.P.,*
   705 F.3d 913
   (9th Cir. Wash. 2012) ...............................................................4, 5, 16, 21

*Covington & Burling v. International Marketing Research, Inc.,*
   2003 WL 21384825
   (D.C. 2003).........................................................................................20

*Delino v. Platinum Cmty. Bank,*
   628 F. Supp. 2d 1226
   (S.D. Cal. 2009).....................................................................................3

*Green v. Anthony Clark Int'l Ins. Brokers, Ltd.,*
   2009 U.S. Dist. LEXIS 72500
   (N.D. Ill. Aug. 17, 2009) ....................................................................11

*///*

*Hall v. City of Santa Barbara*,
    833 F.2d 1270
    (9th Cir. 1986) ..................................................................................... 3

*Hickey v. Voxernet LLC*,
    887 F. Supp. 2d 1125
    (W.D. Wash. 2012) ............................................................................... 21

*In re Jiffy Lube Intern.. Inc., Text Spam Litig.,*
    847 F. Supp. 2d 1253
    (S.D. Cal. 2012) ........................................................................ 19, 20, 21

*Jackson v. Carey*,
    353 F.3d 750
    (9th Cir. 2003) ..................................................................................... 3

*Kazemi v. Payless Shoesource*,
    2010 WL 963225
    (N.D. Cal. 2010) ................................................................................. 21

*Kenro, Inc. v. Fax Daily. Inc.*,
    962 F. Supp. 1162
    (S.D. Ind. 1997) ................................................................................. 18

*Kramer v. Autobytel*,
    759 F. Supp. 2d 1165
    (N.D. Cal. 2010) ................................................................................. 20

*Lutz Appellate Services, Inc. v. Curry*,
    859 F. Supp. 180
    (E.D. Pa. 1994) ............................................................................. 10, 11

*Maryland v. Universal Elections, Inc.*,
    2013 WL 3871006
    (4th Cir. July 29, 2012) ...................................................................... 20

*McDougal v. County of Imperial*,
    942 F.2d 668
    (9th Cir. 1991) ..................................................................................... 3

///

**Kazerouni Law Group, APC**
Costa Mesa, California

*Mims v. Arrow Fin Servs., LLC,*
    132 S.Ct. 740
    (U.S. 2012) ................................................................................................. 1

*N.L. Indus., Inc. v. Kaplan,*
    792 F.2d 896
    (9th Cir. 1986) ........................................................................................... 3

*Parks Sch. of Bus., Inc. v. Symington,*
    51 F.3d 1480
    (9th Cir. 1995) ........................................................................................... 3

*Phillips Randolph Enterprises, LLC v. Adler-Weiner Research Chicago, Inc.,*
    526 F. Supp. 2d 851
    (E.D. Ill. 2007) ..................................................................................... 9-14

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.,*
    2012 U.S. Dist. LEXIS 133222
    (N.D. Ill. Sept. 18, 2012) ........................................................................ 13

*Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,*
    2013 WL 486207
    (D.N.J. Feb. 6, 2013) ............................................................................... 15

*Puttner v. Debt Consultants of Am.,*
    2009 U.S. Dist. LEXIS 48163
    (S.D. Cal. June 4, 2009) ............................................................................ 3

*Rudgayzer & Gratt v. Enine, Inc.,*
    779 N.Y.S. 2d 882
    (App. Term 2004) ..................................................................................... 17

*Sadowski v. Med1 Online, LLC,*
    2008 WL 489360
    (N.D. Ill. Feb. 20, 2008) .......................................................................... 15

*Scheuer v. Rhodes,*
    416 U.S. 232
    (1974) ......................................................................................................... 3

*///*

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

*St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.,*
    2013 WL 1076540
    (E.D. Missouri, March 13, 2013) ...................................................... 14

*Texas v. American Blastfax, Inc.,*
    121 F. Supp. 2d 1085
    (W.D. Tex. 2000) ..................................................................... 20

*United States v. City of Redwood City,*
    640 F.2d 963
    (9th Cir. 1981) .......................................................................... 4

*United States v. Romm,*
    455 F. 3d 990
    (9th Cir. 2006) .......................................................................... 5

*Weber v. Dep't of Veterans Affairs,*
    521 F.3d 1061
    (9th Cir. 2008) .......................................................................... 3

**Statutes**

47 U.S.C. §§ 227 et seq. ................................................................. 1

47 U.S.C. § 227(a)(1) ..................................................................... 2

47 U.S.C. § 227(a)(4) ................................................................. 5, 16

47 U.S.C. § 227(b)(1)(A) .............................................................. 2, 3

47 U.S.C. § 227(b)(1)(B) .............................................................. 3, 4

47 U.S.C. § 227(b)(2)(B) ............................................................. 4, 15

47 U.S.C. § 227(c) ................................................................... 3, 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................passim

Fed. R. Civ. P. 15(a) .................................................................... 4

**Other**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
10 FCC Rcd 12391,
1995 WL 464817 (1995) ....................................................................18

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
*Report and Order,*
18 FCC Rcd. 14014
2003 WL 21517853
(F.C.C. July 3, 2003) ..............................................................4, 17

*In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act,*
7 F.C.C.R. 8752
(1992) ..............................................................................................5

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act,*
21 F.C.C.R. 3783
(2006) ..............................................................................................6

*In The Matter of The Joint Petition Filed By Dish Network LLC, The United States of America, And The States of California, Illinois, North Carolina, And Ohio For Declaratory Ruling Concerning The Telephone Consumer Protection Act Rules,*
2013 WL 1934349
(May 9, 2013) ..................................................................................19

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

## I.    INTRODUCTION

Consumers are outraged over the proliferation of automated or computerized telephone calls that are intrusive, nuisance calls to peoples homes, found to be an invasion of privacy by Congress. *Mims v. Arrow Fin Servs., LLC,* 132 S.Ct. 740, 745 (U.S. 2012). Defendant Acurian, Inc.'s ("Defendant") Motion to Dismiss identifies no basis to justify dismissal of Plaintiff Casey Blotzer's ("Plaintiff") First Amended Complaint ("FAC") for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

Defendant's Motion should be denied in its entirety because Defendant relies upon distinguishable and non-binding case law and Plaintiff has pled sufficient factual allegations to establish that Defendant's prerecorded calls constitute an unsolicited advertisement and a telephone solicitation under the TCPA. Defendant's motion seeks to prejudice Plaintiff by denying adequate discovery needed to prove Plaintiff's claims that the prerecorded voice messages at issue were a pretext to market to Plaintiff in the future. Therefore, Plaintiff respectfully requests the court deny Defendant's motion in its entirety.

## II.    STATEMENT OF THE FACTS

Defendant is a nationwide enrollment and retention company that recruits individuals for medical trials and testing.  FAC, ¶ 9.  Defendant is in the business of recruiting enrollment for medical studies on behalf of commercial companies, including large pharmaceutical companies, providing and selling this service through a results based pricing scheme. *Id*. at ¶ 15.

Beginning in or around February of 2013, Plaintiff began receiving unwanted calls from Defendant to her residential telephone number. *Id*. at ¶ 11. Defendant was soliciting a medical study for people who experienced back pain. *See id*. at ¶ 12.  Defendant placed no less than two (2) telephone calls to Plaintiff's home telephone number, leaving identical messages soliciting participation in the medical study.  *Id*. at ¶ 13.  Defendant and/or its undisclosed principles, agents,

employers, employees and subsidiaries make information relating to medical problems commercially available to the public.  FAC, ¶ 21.

Defendant made these calls on behalf of an undisclosed "large pharmaceutical company."  *Id*. at ¶ 16.  Defendant's telephone calls were a smokescreen, masking their true purpose of acquiring new customers and increasing their own revenue from the undisclosed entity from which Defendant receives monetary compensation for acquiring test subjects and potential customers in an expeditious manner, thus serving as a commercial pretext.  *Id*. at ¶¶ 18 and 19.  Furthermore, Defendant's prerecorded voice messages serve as a pretext to advertise, not only the medical study referred to in the call, but also any other studies and services Defendant and/or the undisclosed entity offers.  *Id*. at ¶ 22.

According to Defendant's own website, "[s]ince 1998, Acurian has supported over 450 protocols for more than 110 companies worldwide. *Id*. at ¶ 9. Acurian was rated as the No. 1 patient recruitment company by trial sites in a 2009 Readex Research survey." Additionally, "Acurian has recruited and enrolled thousands of patients for more than 60 pharmaceutical and biotech companies representing over 4,500 research sites." *Id*.

Plaintiff is not a customer of Defendant, has never provided any personal information, including her home telephone number, to Defendant for any purpose whatsoever, nor has Plaintiff purchased or used any goods or services offered by Defendant at any time. *Id*. at ¶ 14.  Additionally, Plaintiff has had her telephone number continuously registered with the National Do Not Call Registry since February 13, 2011, in an effort to avoid this type of unwanted telemarketing call. *Id*. at ¶ 20.

Moreover, all calls placed by Defendant utilized an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and an "artificial or prerecorded voice" as defined by 47 U.S.C. § 227(b)(1)(A).  *Id*. at ¶¶ 23 and 24. These calls were not made for emergency purposes as defined by 47 U.S.C. §

Kazerouni Law Group, APC
Costa Mesa, California

PLAINTIFF'S OPPOSITION TO DEFENDANT ACURIAN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT;
CASE NO.: CV-13-03438-SVW (MAN)                    2

227(b)(1)(A).  FAC, ¶ 26.  These calls by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1)(B), as well as 47 U.S.C. ¶ 227(c) to the TCPA.  FAC, ¶¶ 28 and 29.

## III.   LEGAL STANDARD ON MOTION TO DISMISS

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1230 (S.D. Cal. 2009). The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiffs.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (S. Ct. 2007).

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and not simply conceivable.  *Id.* at 1974; *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  The court looks not at whether the plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).  A complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief.  *Puttner v. Debt Consulatants of Am.,* 2009 U.S. Dist. LEXIS 48163 *8 (S.D. Cal. June 4, 2009).  On a Rule 12(b)(6) motion, the court does not "[r]equire heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 570.  In the Ninth Circuit, the Rule 12(b)(6) motion "is viewed with disfavor and is rarely granted." *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270,1274 (9th Cir. 1986)).

"For all of these reasons, it is only under extraordinary circumstances that

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

dismissal is proper under Rule 12(b)(6)." *Brown v. Defender Sec. Co.,* 2012 WL 5308964 *2 (C.D. Cal. Oct. 22, 2012) (citing *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981).  As a general rule, leave to amend a complaint, which has been dismissed, should be freely granted.  Fed. R. Civ. P. 15(a).

## IV.   STATUTORY BACKGROUND

"The [Telephone Consumer Protection Act] makes it unlawful 'to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).' 47 U.S.C. § 227(b)(1)(B)." *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230, 1233 (9th Cir. Wash. 2012).

The Commission refers to the Federal Communications Commission ("FCC"), which has authority to exempt certain types of artificial or prerecorded voice calls to landline telephones, such as "(i) calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines-- (I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(b)(2)(B).  Specifically, the FCC has exempted from the prohibition on making prerecorded calls to landlines those calls that do not include a "telephone solicitation" or "unsolicited advertisement." *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14095 ¶¶ 136, 141, 2003 WL 21517853 (F.C.C. July 3, 2003) ("FCC 2003 Order").

Interestingly, Defendant's sole ground for challenging the FAC concerns whether the prerecorded messages constitute "unsolicited advertisement" and a "telephone solicitation" (*see* Def. Memo., pp. 5-7), and therefore, Defendant concedes the sufficiency of the remaining allegations in the FAC, which are properly pled in all respects.  Since Defendant did not raise any arguments regarding

Kazerouni Law Group, APC
Costa Mesa, California

the remaining elements of Plaintiff's TCPA claim, Defendant is not permitted to challenge those elements for the first time in a Reply brief. *See United States v. Romm,* 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived.").

Because Defendant left two prerecorded voice messages on the Plaintiff's home telephone, which calls were not exempted by the FCC, without prior express consent, Plaintiff states a claim against Defendant under the TCPA.

## V. PLAINTIFF MORE THAN ADEQUATELY ALLEGES THAT DEFENDANT'S UNWANTED TELEPHONE CALLS CONSTITUTE UNSOLICITED ADVERTISEMENTS, AS CONFIRMED BY THE FCC AND NINTH CIRCUIT AUTHORITY

"The TCPA recognizes the legitimacy of the telemarketing industry, but states that unrestricted telemarketing could be an intrusion of privacy and, in some instances, a risk to public safety." *In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act,* 7 F.C.C.R. 8752, 8753 ¶ 2 (1992). "Accordingly, the TCPA imposes restrictions on the use of automatic telephone dialing systems, the use of artificial or prerecorded voice, and on the use of telephone facsimile machines to send unsolicited advertisements." *Id.* Unsolicited advertisement means "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

Defendant's argument hinges on the allegation that the alleged messages do not promote a "commercially available service" because the messages "concerned a free clinical medical study." *See* Def. Memo., p. 6:20-22. However, the Ninth Circuit has held that messages need not contain an explicit mention of a service where the implication is clear from the context. *See Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230, 1234-1235 (9th Cir. Wash. 2012) ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the

calls does not inoculate them.") (emphasis added). Here, it is reasonably clear from the context, as supported by Plaintiff's allegations, that the prerecorded calls regarding a back pain study were a mere "pretext" to market to Plaintiff and other similarly situated consumers. *See* FAC, ¶¶ 11 and 22.

### A. Multiple FCC Orders Confirm Defendant's Calls Are Unsolicited Advertisements

"Offers for free goods and services that are part of an overall marketing campaign to sell property, goods, or services constitute 'advertising the commercial availability or quality of any property, goods, or services.'" FCC 2003 Order, 18 F.C.C.R. at 14097 ¶ 140. "In many instances, 'free' seminars serve as a pretext to advertise commercial products and services…Based on this, it is reasonable to presume that such messages describe the 'quality of an property, goods or services." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act,* 21 F.C.C.R. 3783, 3814 ¶ 52 (2006) ("FCC 2006 Order") (emphasis added). "We conclude that [] messages that promote goods or services even at no cost, such as…free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *Id.* (emphasis added).

Plaintiff's FAC clearly alleges that the prerecorded messages were sent to Plaintiff in an effort to "*sell or solicit its services*" by participating in a medical study (FAC, ¶¶ 11 and 12 (emphasis added)); and, even if that study were "free," it served as a "pretext to advertise, not only the medical study referred to in the call, but also any other studies and services Defendant and/or the undisclosed entity offers" (*id.* at ¶ 22). A common sense interpretation of Defendant's message, asking Plaintiff to participate in a study relating to back pain, leads a reasonable consumer to believe that Defendant is promoting a commercially available service or product offered to alleviate such back pain, especially given the allegation in the FAC that "Defendant receives monetary compensation for its efforts…to place the solicitation calls" (*id.* at ¶ 17) and the calls "serv[e] as a commercial pretext" (*id.* at

Kazerouni Law Group, APC
Costa Mesa, California

¶ 19). Defendant is not permitted to challenge the truthfulness of these and other of Plaintiff's allegations on the present motion pursuant to Fed. R. Civ. P. 12(b)(6).

**B.     The Prerecorded Messages Here Are Not The Type of Messages Exempted By The FCC**

The prerecorded messages here are very different from the types of calls that the FCC has found do not include an unsolicited advertisement. For example, the following types of calls do not constitute an unsolicited advertisement: (i) calls from a business to *advise its own employees* of a late opening time due to weather; (ii) calls from a nationwide organization that wishes to remind *members* of an upcoming meeting or change in schedule; (iii) or calls from a catalogue or delivery company to confirm the arrival, shipment, or delivery date of a product to a *customer*. *See* FCC 2003 Order at p. 81, fn. 459 (emphasis added).

In the present case, Plaintiff is not an alleged employee, member, or customer of Defendant's business, and the prerecorded messages did not confirm the arrival, shipment, or delivery date of a product. There was no established business relationship[1] between the parties at the time of the prerecorded messages, unlike in the examples provided by the FCC above that did not constitute an unsolicited advertisement. Furthermore, the examples the FCC gave are for <u>non-profit</u> organizations, whereas Defendant is alleged to be a for-profit (*see* FAC, ¶¶ 17-19) organization whose end game here was clearly to make money from these calls.

Additionally, the FCC 2006 Order outlined further types of communication that do not constitute an unsolicited advertisement. "[C]ommunications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules." FCC 2006 at 3814, ¶ 52. None of these exceptions apply to the communications here because "medical studies" usually involve testing drugs and services for specific ailments – which cannot be considered a purely informational communication as these drugs

---

[1] The FAC clearly alleges the absence of a business relationship. FAC, ¶ 14.

**Kazerouni Law Group, APC**
Costa Mesa, California

are, or will usually become, commercially available, and Defendant is alleged to have used the calls at issue as a "smokescreen, masking their true purpose of acquiring new customers and increasing their own revenue…" (FAC, ¶ 18).

### C. Defendant's Case Law Is Out-of-Date, Non-Binding, and Readily Distinguishable

#### 1. Defendant's reliance on *Ameriguard* is misplaced

Defendant cites to *Ameriguard, Inc. v. Univ. of Kansas Medical Center Research Institute, Inc.,* 2006 WL 1766812 (W.D. Missouri, June 23, 2006) where a facsimile regarding a clinical drug trial for diabetes was found not to constitute an unsolicited advertisement. *See* Def. Memo., 5:11-27. In ruling on the Rule 12(b)(6) motion, the *Amerigaurd* Court considered the actual fax and the information it presented. 2006 WL 1766812 at *1. The fax contained specific qualifications for participants, cost to participants, compensation for participants, and information relating to diabetes and diabetes prevention. *Id.* In that case, the plaintiff argued that the invitation to receive information qualified as "commercial availability." *Id.* The court disagreed for two reasons: (1) the complaint "did not allege that Defendant made 'information about diabetes prevention' commercially available to the public," as opposed to merely delivering it to people; and (2) "there is no suggestion that Defendant included the call for volunteers as a smokescreen to mask a true purpose of engaging in the commercial activity of providing information or selling medicine." *Id.*

Unlike in *Ameriguard,* Plaintiff here has alleged "Defendant and/or its undisclosed principles, agents, employers, employees and subsidiaries make information relating to medical problems commercially available to the public." FAC, ¶ 21. Additionally, "Defendant's telephone calls were a smokescreen, masking their true purpose of acquiring new customers and increasing their own revenue from the undisclosed entity from whom Defendant receives monetary compensation for acquiring test subjects and potential customers in an expeditious

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

manner." FAC, ¶ 18 (emphasis added). The court in *Ameriguard* makes it clear that had the plaintiff adequately plead *additional* factual allegations, the defendant's motion to dismiss might not have been granted. 2006 WL 1766812 at *1. Furthermore, the court in *Ameriguard* was presented with the actual facsimile, whereas here, the actual prerecorded messages are not presently before the Court. Plaintiff's pleadings have surpassed the expectation of the court in *Ameriguard*. As such, *Ameriguard* is inapplicable, or alternatively, confirms that Plaintiff has sufficiently pled factual allegations to survive a 12(b)(6) motion to dismiss.

### 2.  Defendant's reliance on *Phillips* is misplaced

In a similar case cited by Defendant, *Phillips Randolph Enterprises, LLC, v. Adler-Weiner Research Chicago, Inc.,* 526 F.Supp.2d 851 (N.D. Ill. Jan. 30, 2007), the court also had the benefit of the actual facsimile when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 852. The *Phillips* case involved the transmission of a facsimile to invite business owners and decision makers to participate in a research *discussion* regarding a proposed new healthcare program sponsored by the Chicagoland Chamber of Commerce, where the volunteers were compensated $200.00 but had to qualify and be pre-screened to participate in the discussion. *Id.* at 853.

In *Phillips*, the plaintiff made two arguments: (1) the fax advertises a service in the form of a research discussion; and (2) the fax is comparable to a pre-textual free seminar. *Id.* The court disagreed with both arguments. The first argument was rejected based solely on the reasoning set forth in *Ameriguard* (*id.*), which Plaintiff has already shown does not support Defendant's arguments here. The second argument was rejected because: (1) "the complaint d[id] not allege that the fax was a pretext to an advertisement; and (2) "[t]here [were] no additional allegations addressing whether defendants advertise any products or services at those discussion, or that defendants are in the business of advertising products or services in those discussions." *Id.*

**Kazerouni Law Group, APC**
Costa Mesa, California

Here, however, "Defendant's purpose and language of the prerecorded voice messages is geared towards acquiring new customers for the undisclosed company, which in turn creates more revenue and economic benefit for Defendant, thus serving as a commercial pretext." FAC, ¶ 19. Additionally, "Defendant's prerecorded voice messages, serve as a pretext to advertise, not only the medical study referred to in the call, but also any other studies and services Defendant and/or the undisclosed entity offers." *Id.* at ¶ 22. Moreover, "Defendant was acting on behalf of, or under the direction of, an undisclosed 'large pharmaceutical company.'" *Id.* at ¶ 16.

Further, it is a well-known fact that "large pharmaceutical companies" derive their main source of income from selling pharmaceuticals and services, directly to the public and medical providers. While Defendant may not be selling these pharmaceuticals directly to the public (Plaintiff is unable to know whether this is the case without discovery), Defendant's calls served as a mere pretext for selling or marketing products and services Defendant and/or the undisclosed entity offer. *See id.* at ¶ 22.

The *Phillips* Court cites to *Lutz Appellate Servs., Inc., v. Curry,* 859 F.Supp. 180, 181 (E.D. Pa. 1994) for the comparison of faxes advertising job openings that were considered outside the scope of the TCPA (562 F. Supp. 2d at 853), which is not applicable to the current case where an invitation to participate in a medical study is not akin to an offer of employment. The *Lutz* Court concluded that the "fax is not an indiscriminate, open-ended invitation," since individuals must qualify, and be pre-screened and compensated. 526 F. Supp. 2d at 853. The fact that the facsimile stated on its face that potential participants had to prequalify in order to participate in the study, and that they would be compensated, was crucial to the *Lutz* Court's holding that the fax was not an advertisement. *Phillips,* 526 F. Supp. 2d at 853.

Lastly, the court in *Green v. Anthony Clark Intern. Ins. Brokers, Ltd.,*

Kazerouni Law Group, APC
Costa Mesa, California

addressed the situation where the fax (or phone call) "does not advise the recipient to call to see if he qualifies but rather encourages him to call to 'further discuss the possibility of selling.'" 2009 WL 2515594, *3 (N.D. Ill. Aug. 17, 2009). Because *Green* sufficiently alleged that defendant's fax constituted an unsolicited advertisement within the meaning of the TCPA, it was enough to overcome a motion to dismiss. *Id.* Here, the calls at issue "invited Plaintiff to contact Defendant." FAC, ¶ 12. As in *Green,* Plaintiff here has alleged enough facts to survive a motion to dismiss by stating a plausible claim that the two prerecorded messages were unsolicited advertisements, as they were at the very least a pretext for marketing to Plaintiff.

### 3. Both *Ameriguard* and *Phillips* are distinguishable on the basis that the court in each of those cases had the benefit of the actual facsimile at issue when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

In both *Ameriguard* and *Phillips*, the courts were able to consider a copy of the facsimile sent by the defendants, whereas here, the exact prerecorded messages left by Defendant is not available for the Court's consideration. Without affording Plaintiff ample discovery, Plaintiff cannot determine: (i) Defendant's true intention for the unsolicited prerecorded calls; (ii) which products or services Defendant may or may not offered commercially to participants after Defendant gets these participants in the door; (iii) whether Defendant is actually conducting the medical study or if Defendant is a third party call center or; (iv) whether participants in the study must qualify for the medical services, (v) whether they are compensated for their time and effort; (vi) whether Defendant placed the calls at issue on behalf of an undisclosed "large pharmaceutical company"; and (vii) what products are advertised through these studies. In the current case, this Court is unable to consider any of this information on this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Both the defendants in *Ameriguard* (2006 WL 1766812 at *1) and *Phillips*

**Kazerouni Law Group, APC**
Costa Mesa, California

(526 F. Supp. 2d at 851) were the actual "research facilities" making the calls. Contrarily, Defendant here is akin to a call center, "acting on behalf of, or under the direction of an undisclosed 'large pharmaceutical company.'" FAC, ¶¶ 9 and 16. Although it is understandable that a research facility conducting research may not sell goods or services directly to the public, "large pharmaceutical companies" do sell pharmaceuticals to the public. Here, Defendant is alleged to have sought out new customers to "increase their own revenue from the undisclosed entity from whom Defendant received monetary compensation" (*id.* at ¶ 18). Therefore, the decisions in *Ameriguard* nor *Phillips* do not support Defendant's position that the calls at issue are not actionable under the TCPA, as these were not purely information calls devoid of an pretext for making money from marketing. Indeed, Defendant's end game here was to make money from these calls by obtaining new customers for the undisclosed entity (*see id.*).

### 4.   *Friedman* is factually distinguishable

The *Friedman* case involved a situation where a company made unsolicited prerecorded calls to residential telephones inviting the recipients to attend a free recruiting webinar in order to become an agent for the caller and potentially sell health insurance to others. *See Friedman v. Torchmark Corp.*, 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013). The plaintiff in *Friedman* did not allege that the defendant's calls attempted to sell the plaintiff goods or services at that time or in the future, nor did the complaint alleges the calls were a pretext for marketing, but rather that the prerecorded calls "*may have* invited Plaintiff to attend for free" for the purpose of learning about selling Defendant's products to others. *Id.* at *4-5 (emphasis added). Such allegations lead the *Friedman* Court to hold that "Plaintiff only alleges that the messages invited Plaintiff to learn about Defendant's products in order to potentially sell them to others." *Id.* Thus, *Friedman* is distinguishable because Plaintiff's allegations here allege that the prerecorded calls were a pretext for marketing to Plaintiff in the future, as previously explained.

**5.** **Recent decisions distinguish *Ameriguard* and *Phillips* and support Plaintiff's position that the calls are actionable**

A much more recent decision in *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, 2012 WL 4120506, *1 (N.D. Ill. Sept. 18, 2012), which involved unsolicited facsimiles promoting a free seminar on medical aesthetics, supports Plaintiff's position that the calls are actionable marketing calls because it is plausible that Defendant promoted and/or sold it services by conducting a free back pain study. The court in *Physicians Healthsource, Inc.* stated in relevant part:

> On its face, the fax at issue promotes a free seminar on various medical aesthetics techniques. <u>While the fax does not indicate an intent to market products or services, the complaint alleges that the seminar is part of Alma's "work or operations to market [Alma]'s goods or services." Accepting PHI's well-pleaded allegations as true and drawing all inferences in PHI's favor, it is plausible that Alma promoted its products and services by holding a free seminar.</u>  That is enough to state a claim under the TCPA.

*Id.* at *2 (emphasis added).

The defendant in *Physicians Healthsource, Inc.* relied on both *Ameriguard* and *Phillips*; however, the court noted that "unlike the plaintiffs in those cases [plaintiff here] alleges that Alma used the free seminars like the one advertised here to market its goods." *Id.* Similarly here, as shown above, Plaintiff also alleges that these "research studies" serve as a commercial pretext. *See* FAC, ¶¶ 19 and 22. As such, the defendant's motion to dismiss was denied, because PHI's allegations crossed the threshold of providing fair notice of what the claim is and the grounds upon which it rests. *Physicians,* 2012 WL 4120506 at *2. Plaintiff's claims here mirror those of PHI's, and surpass the threshold of providing Defendant notice of the claim alleged and the grounds upon which they rests, and thus plausibly allege that the calls at issue were a pretext for marketing to Plaintiff.

In an even more recent case concerning an invitation to a medical discussion,

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

the court declined to follow *Ameriguard* and *Phillips* where the invitation was: "(1) sent by a pharmaceutical manufacturer, (2) linked to that manufacturer's hypertension drug, and (3) addressed to a physician." *St. Louis Heart Center, Inc. v. Forest Pharmaceuticals, Inc.,* 2013 WL 1076540, *4 (E.D. Missouri, Mar. 13, 2013).

Here, "Defendant was acting on behalf of, or under the direction of, an undisclosed 'large pharmaceutical company.'" FAC, ¶ 16. "Defendants purpose and language of the prerecorded voice messages is geared towards acquiring new customers for the undisclosed company…" *Id.* at ¶ 19. That Defendant may have been acting as a third party call center, procuring new customers for their customer from whom they derive economic benefit (*see id.* at ¶ 15), does not mean that both Defendant and this undisclosed entity should escape liability for violating the TCPA by making unsolicited prerecorded calls to consumers for financial gain. Had this undisclosed "large pharmaceutical company" placed these calls, the calls most certainly would have constituted unsolicited advertisements.

Therefore, because Plaintiff adequately pleads that Defendant is working on behalf an undisclosed "large pharmaceutical company," and that these unlawful phone calls serve as a pretext for commercial advertising, as well as being a mere smokescreen to mask either Defendant or this undisclosed entities' true purpose to sell and solicit their services, Defendant's motion should be denied.

## VI.   DEFENDANT'S ECONOMIC BENEFIT COMBINED WITH THE GOAL OF ACQUIRING NEW CUSTOMERS FURTHER SUPPORTS PLAINTIFF'S ARGUMENT THAT THE PRERECORDED CALLS IN QUESTION ARE UNSOLICITED ADVERTISEMENTS

Defendant argues "the mere fact that Defendant operates a for-profit business does not transform the informational messages at issue into actionable advertisement calls in violation of the TCPA." Def. Memo., 7:11-13. In support of its position, Defendant cites *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,* 2013 WL 486207, *4 (D.N.J. Feb. 6, 2013). *See* Def. Memo. p. 7:21-8:6. However, Defendant glosses over the exact language quoted.

*Physicians* stated, "[T]he potential to gain some benefit from sending information, *without the presence of additional commercial statement in the message*, is insufficient to transform an informational message to an advertisement." 2013 WL 486207 at *4 (emphasis added). *Physicians* also provided additional clarification for what language would be needed to constitute a "commercial statement" by citing to *Sadowski v. Med1 Online, LLC,* 2008 WL 489360, *7 n.5 (N.D. Ill. Feb. 20, 2008) (finding that the potential economic benefit in combination with commercial content, *such as language geared towards acquiring new customers*, determine whether the fax may be an advertisement) (emphasis added).

In essence, the message must contain the potential for economic benefit combined with commercial content, such as language geared towards acquiring new customers. Here, "Defendant is in the business of recruiting enrollment for medical studies on behalf of commercial companies, including large pharmaceutical companies, providing and selling this service through a results-based pricing scheme." FAC, ¶ 15. The purpose of calls at issue was "so that Defendant could receive monetary compensation for its efforts by the undisclosed entity that hired Defendant to place the solicitation phone calls." *Id.* at ¶ 17.

In response to such allegations, Defendant makes the bold and incorrect assertion that "Defendant's 'purposes' in making these alleged calls are wholly irrelevant" (Def. Memo., 8:18-19), which flies directly in the face of the plain language of FCC Rulings. The FCC has provided an exemption from the prohibition on automated calls to residential landlines: "(i) made for emergency *purposes*; (ii) made for non-commercial *purposes*; (ii) made for commercial *purposes* but not including or introducing an unsolicited advertisement…" 47 U.S.C. § 227(B)(2)(B) (emphasis added). Contrary to Defendant's unsupported statement, the *purpose* of the phone calls at issue is entirely relevant. "Defendant's purpose and language of the prerecorded voice messages is geared towards acquiring new customers for the undisclosed company, which in turn creates more

Kazerouni Law Group, APC
Costa Mesa, California

PLAINTIFF'S OPPOSITION TO DEFENDANT ACURIAN, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT;
CASE NO.: CV-13-03438-SVW (MAN)                    15

revenue and economic benefit for Defendant, thus serving as a commercial pretext." FAC, ¶ 19. Thus, according to *Physicians* (cited by Defendant, *supra*), as well as *Sadowski*, the calls in questions were unsolicited advertisements.

Consequently, the calls at issue constitute an unsolicited advertisement.

## VII.  PLAINTIFF HAS ADEQUATELY ALLEGED THAT DEFENDANT'S TELEPHONE CALLS CONSTITUTE TELEPHONE SOLICITATIONS REGARDING FUTURE SERVICES

The FCC has also exempted from the prohibition on making prerecorded calls to landlines those calls that do not constitute a telephone solicitation.  FCC 2003 Order at 14095, ¶¶ 136, 141. "The term 'telephone solicitation' means the initiation of a telephone call or message, for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person," not including "a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization."  *See* 47 U.S.C. § 227(a)(4). "The Ninth Circuit has construed the language to mean that the messages were made for the purpose of encouraging the listener to engage in future commercial transactions with the caller to purchase property, goods, or services." *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 919 (9th Cir. 2012).

Without any analysis or analogous case law, Defendant argues, "Plaintiff only alleges that the messages invited her to learn more about and possibly participate in, medical studies." Def. Memo., 9:3-4 (citing FAC, ¶ 12).  Defendant further contends, "Plaintiff fails to allege that the messages encouraged the purchase of property, goods or services, her TCPA claim fails as a matter of law." Def. Memo., 9:5-6.  Interestingly, Defendant ignores Plaintiff's factual allegations that Defendant contacted Plaintiff in "an effort to sell or solicit its services" (FAC, ¶ 11 (emphasis added)) by "soliciting Plaintiff's participation in medical studies" (*Id*. at ¶ 12). These allegations are sufficient to plausibly state a claim against Defendant

Kazerouni Law Group, APC
Costa Mesa, California

under the TCPA for unlawful telephone solicitation calls. Under the liberal federal pleading standard, Plaintiff need not plead with particularity[2] what product or service Defendant was soliciting, or on whose behalf such solicitations were being conducted, nor is Defendant permitted to dispute the truthfulness of the allegations in Plaintiff's FAC.

Importantly, as the court in *Rudgayzer & Gratt v. Enine, Inc.* points out, "[W]e do not limit our scrutiny to the four corners of the [message].  Rather, such factors as who the sender is, as well as his motives, purposes and intentions for [leaving the message], are all relevant." 779 N.Y.S.2d 882, 885 (App. Term 2004) (emphasis added). Therefore, the Court is free to examine the motives and intentions of Defendant regarding the allegedly free back pain study and then Defendant's true intentions come to light. *See e.g.*, *Gragg v. Orange Cab Co.*, 2013 U.S. Dist. LEXIS 7474, 13 (W.D. Wash. Jan. 17, 2013) (court considered the motive of the defendant to sell taxi services by offering free "Taxi Magic app").

Defendant's call to Plaintiff to determine whether Plaintiff wished to purchase services of goods in the future (Plaintiff alleges that the calls are a mere pretext to market to Plaintiff) are themselves solicitations. "If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." FCC Report and Order, 18 F.C.C.R. 14014, 14098 (emphasis added). *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12408, 1995 WL 464817, p. 4, ¶ 15 (1995) ("A call made by a telemarketer solely to determine whether a subscriber wishes to receive a telephone solicitation is, in effect, a solicitation from that telemarketer.").

Had Defendant truly wished to advertise a free medical research study where

---

[2] A complaint need not state detailed factual allegations to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 554.

Kazerouni Law Group, APC
Costa Mesa, California

the participants would be compensated, and pre-screened for qualifying characteristics, it would have made more sense to post advertisements in print form, online, or even billboards to attract people suffering from back pain. Instead, Defendant obtained Plaintiff's home telephone number by unknown means (*see* FAC, ¶ 14) and left two identical unsolicited prerecorded messages on Plaintiff's home telephone (*see id.* at ¶ 13), thus converting Plaintiff's home telephone into Defendant's own personal advertising medium.

Further, the "medical study" itself is alleged to be a "smokescreen masking their true purpose of acquiring new customers and increasing their own revenue from the undisclosed entity from whom Defendant receives monetary compensation for acquiring test subjects and potential customers in an expeditious manner." *Id.* at ¶ 18.[3] This is the exact type of activity that violates the TCPA, i.e., calls made for the purpose of encouraging the purchase of encouraging the purchase of property, goods, or services, even when offered through a smokescreen of a "free" offer. *See Kenro,* 962 F. Supp. at 1170-71. Therefore, Plaintiff's FAC more than adequately alleges that the calls constitute telephone solicitations.

## VIII.  TCPA PROVIDES FOR VICARIOUS LIABILITY

The TCPA does not limit liability to the entity that actually makes the calls, thus imputing liability upon this "undisclosed large pharmaceutical company" for the calls Defendant placed on its behalf. *See. e.g., Bridgewater Health Care Ctr., Ltd., v. Clark,* 2012 U.S. Dist. LEXIS 37310, *4 (N.D. Ill. March 19, 2013) ("the TCPA creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.")

---

[3] *See Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp. 1162, 1170-71 (S.D. Ind. 1997) (finding the affixing of non-commercial information to a commercial advertisement to be an attempt to evade restrictions on faxing commercial advertisements). In *Ameriguard,* 2006 WL 1766812 at *1, the plaintiff did not suggest that the defendant included the call for volunteers as a smokescreen to mask a true purpose of engaging in commercial activity.

Kazerouni Law Group, APC
Costa Mesa, California

(citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995)); *see also In re Jiffy Lube Intern.. Inc., Text Spam Litig.,* 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012).

The Federal Communications Commission recently ruled on May 9, 2013 that federal principles of agency apply to § 227(b) and (c) of the TCPA, thus permitting vicarious liability for autodialed and prerecorded calls made on behalf of that entity.  *See In The Matter of The Joint Petition Filed By Dish Network LLC, The United States of America, And The States of California, Illinois, North Carolina, And Ohio For Declaratory Ruling Concerning The Telephone Consumer Protection Act Rules,* 2013 WL 1934349 (May 9, 2013) ("while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of § 227(b) or § 227(c) that are committed by third-party telemarketers.")

Defendant once more tries to escape liability by claiming "Plaintiff even fails to allege that the study would be conducted by the caller – Defendant." Def. Memo., 9:4-5. However, Plaintiff alleges "Defendant is in the business of recruiting enrollment for medical studies on behalf of commercial companies, including large pharmaceutical companies…" FAC, ¶ 15. Again, Defendant is trying to exploit what it believes to be a loophole in TCPA law. Such a loophole, however, does not exist.

Without the benefit of discovery, Plaintiff cannot identify the undisclosed large pharmaceutical company. "Interpreting the TCPA to exempt either [call centers] or advertisers would effectively allow advertisers to make an end-run around the TCPA's prohibitions." *Accounting Outsourcing, LLC. v. Verizon Wireless Personal Communications, L.P.,* 329 F.Supp.2d 789, 806 (M.D. La. Aug. 5, 2004); *see also Covington & Burling v. International Marketing Research, Inc.,* 2003 WL 21384825, *7 (D.C. 2003), *amended on reconsid., in part, by* 2003 WL

21388272 (D.C. Super May, 14 2003); *Texas v. American Blastfax, Inc.,* 121 F.Supp.2d 1085, 1090 (W.D. Tex. 2000).

In *Maryland v. Universal Elections, Inc.,* the defendant tried to escape liability by hiring a third party call center to place the unlawful calls, arguing that because they did not place the calls, they were not liable. 2013 WL 3871006, *6 (4th Cir. July 29, 2012). The Maryland Court disagreed, holding "such a narrow reading would undermine the purpose of the Act and would allow the actual violators to escape liability." *Id.* The third party call center's "terms of use" provided indemnification from TCPA violations, placing that responsibility on their customer. *Id.* Here, Defendant allegedly placed the unlawful calls, but without the benefit of discovery, Plaintiff cannot possibly determine the extent of liability Defendant and/or the undisclosed entity will ultimately bear.

In *Jiffy Lube Intern., Inc. Text Spam Litig.,* the court held plaintiff's allegation that "Defendant and their agents directed the mass transmission of wireless spam to the cell phones nationwide…that Heartland 'engaged TextMarks' to conduct the campaign…" was enough to survive a motion to dismiss. 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012). "Moreover, courts in this circuit have generally upheld complaints similar to this one in the face of 12(b)(6) motions." *Id.* (citing *Kramer v. Autobytel,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010) (upholding complaint that alleged that defendant 'contracted with LeadClick, who thereafter, contracted with B2Mobile, for the purpose of advertising Autobytel's products and services through spam text messages."); *Kazemi v. Payless Shoesource,* 2010 WL 963225 (N.D. Cal. 2010)).

Without the benefit of discovery, Plaintiff cannot know the identity of the "undisclosed large pharmaceutical company" FAC, ¶ 16. However "this ambiguity is not fatal to Plaintiff's [FAC], indeed to goes to the heart of the dispute." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012) (when relationships between defendant, plaintiff and third party who sends the message is unclear, the

**Kazerouni Law Group, APC**
Costa Mesa, California

1  ambiguity is not fatal to the complaint). Just as shown in *Jiffy Lube*, Plaintiff's

2  allegations that Defendant is working on behalf of, or under the direction of, an

3  undisclosed entity, who hired Defendant to acquire new customers (FAC, ¶¶ 17 and

4  19), is more than enough to state a plausible claim for relief.

5      Therefore, not only does Plaintiff allege enough allegations to establish

6  liability on behalf of Defendant, Plaintiff also adequately alleged facts to support a

7  claim of vicarious liability against the undisclosed entity that allegedly hired

8  Defendant to place the calls at issue. As was the case in *Chesbro*, "these calls were

9  aimed at encouraging listeners to engage in future commercial transactions with

10 [Defendant] to purchase its [services]. They constituted unsolicited advertisements,

11 telephone solicitations, and telemarketing, and were prohibited by the TCPA…"

12 *Chesbro*, 697 F.3d at 1235. Accordingly, Defendant's motion should be denied.

13 **IX.   CONCLUSION**

14      In summary, Plaintiff's FAC adequately alleges that that the two prerecorded

15 messages were "unsolicited advertisements" and "telephone solicitations" under the

16 TCPA. Therefore, Plaintiff respectfully requests that the Court deny Defendant's

17 motion to dismiss in its entirety. Should the Court grant Defendant's motion, in

18 whole or in part, Plaintiff respectfully requests leave to amend the FAC of any

19 deficiencies.

20                                  Respectfully submitted,

21                                  **Kazerouni Law Group, APC**

22

23 Date: September 2, 2013          By:/s/ *Abbas Kazerounian*

24                                      Abbas Kazerounian
                                        *Attorneys for Plaintiff*

25

26 ///

27 ///

28 ///

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
Nicholas J. Bontrager, Esq. (SBN: 252114)
nbontrager@attorneysforconsumers.com
369 S. Doheny Dr., #415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*

**Kazerouni Law Group, APC**
Costa Mesa, California